UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNBELT WORKSITE
MARKETING, INC.,

   Plaintiff,

v.                                                    CASE NO.: 8:09-cv-02188-EAK-MAP

METROPOLITAN LIFE
INSURANCE COMPANY,

   Defendant.
_____/

### ORDER ON PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVIT OF JOY MYERS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on Plaintiff's Motion to Strike (Doc. 35) the Affidavit of Joy Myers as filed in support of Defendant's Motion for Summary Judgment (Doc. 30), Plaintiff's Motion for Partial Summary Judgment (Doc. 29), Defendant's Motion for Summary Judgment (Doc. 30), and responses thereto (Doc. 37, 36). For the reasons set forth below, Plaintiff's Motion to Strike the Affidavit of Joy Myers in support of Defendant's Motion for Summary Judgment is **DENIED**; Plaintiff's Motion for Partial Summary Judgment is **DENIED**; and Defendant's Motion for Summary Judgment is **DENIED**.

### PROCEDURAL HISTORY

Plaintiff, Sunbelt Worksite Marketing, Inc. ("Sunbelt"), initially filed this action on September 28, 2009, in the Circuit Court for the Tenth Judicial Circuit in and for Polk County, Florida. Defendant, Metropolitan Life Insurance Company ("MetLife"), then removed this case to the U.S. District Court Middle District of Florida based on diversity of citizenship, as Sunbelt

is a Florida Corporation, and MetLife is a New York Corporation authorized to do business in Florida.

On November 18, 2010, Sunbelt filed its Amended Complaint with Jury Demand in the Middle District of Florida. Sunbelt's Amended Complaint alleges that MetLife has breached its contract with Sunbelt called the "MetLife Small Market Commission Agreement" ("the Small Market Commission Agreement") and/or the "Metropolitan Life Insurance Company Single Case Commission Agreement" ("the Polk School Board Commission Agreement") by failing to pay Sunbelt $25,000.00 or more in commissions that Sunbelt claims it earned from October 2008 through the date of this lawsuit's filing. MetLife filed its Answer and affirmative defenses with Jury Demand to Sunbelt's Amended Complaint and Jury Demand on December 3, 2010.

On March 25, 2011, Sunbelt filed its Motion for Partial Summary Judgment. On March 28, 2011, MetLife filed its Motion for Summary Judgment. Subsequently on April 13, 2011, Sunbelt filed its Motion to Strike the Affidavit of Joy Myers in Support of Defendant's Motion for Summary Judgment. After both parties were granted a time extension to file their responses to one another's summary judgments, on April 21, 2011, Sunbelt filed its Response in Opposition of MetLife's Motion for Summary Judgment, and MetLife filed its Memorandum in Opposition of Sunbelt's Motion for Partial Summary Judgment. Finally, on April 27, 2011, MetLife filed its Memorandum in Opposition to Sunbelt's Motion to Strike the Affidavit of Joy Myers in Support of Defendant's Motion for Summary Judgment. Each motion will be addressed in turn.

## MOTION TO STRIKE AFFIDAVIT OF JOY MYERS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### DISCUSSION

Sunbelt's Motion to Strike the Affidavit of Joy Myers presents to this Court two arguments to support its Motion. **A.)** First, Sunbelt argues that because Joy Myers' affidavit is not based on her own personal knowledge the affidavit must be struck. **B.)** Second, Sunbelt argues Joy Myers' affidavit is a sham because it is inconsistent with her prior deposition. For the reasons set forth below, this Court addresses each argument in turn below, and finds both arguments are without merit and, therefore, Sunbelt's Motion is denied.

### A. Rule 30(b)(6) Designee's Sufficiency of Knowledge

The Federal Rules of Civil Procedure requires that an affiant, who has been designated to testify on a corporation's behalf in accordance with Rule 30(b)(6), "must testify about information known or reasonably available *to the organization*." (Emphasis added). *See Cont'l Cas. Co. v. First Fin. Employee Leasing, Inc.*, 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010) (quoting, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir.2006)), the organization's "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters *personally* known to that designee or to matters in which that designee was *personally* involved.")(emphasis added); *See also Marcelle v. Am. Nat. Delivery, Inc.*, 3:09-CV-82-J-34MCR, 2009 WL 4349985 (M.D. Fla. Nov. 24, 2009) (*quoting Beloit Liquidating Trust v. Century Indem. Co.*, 2003 U.S. Dist. LEXIS 2082, at *6, 2003 WL 355743, at *2 (N.D.Ill.2003), a corporation must prepare the corporate representative "to adequately testify not only on matters known by the deponent, but also on subjects that the **entity** should reasonably know").

Therefore, Plaintiff's argument that Ms. Joy Myer's, a Rule 30(b)(6) designee, affidavit must be struck because it is not based on personal knowledge is in error and Plaintiff's Motion is denied.

Recently in *Atlantic Marine Florida, LLC. V. Evanston Ins. Co.*, 2010 WL 1930977 (M.D. Fla. May 12, 2010), this Court refused to strike an authorized corporate representative's filed affidavit in support of the corporation's motion for summary judgment on the grounds of insufficient *personal* knowledge. (emphasis added). This Court found that it is not necessary for a corporate representative designated as a Rule 30(b)(6) witness to have direct, personal knowledge of each and every fact discussed in an affidavit or deposition because a Rule 30(b)(6) representative or designee can be inferred to have knowledge on the behalf of the corporation as the corporation is meant to appear vicariously through them. *See also ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc., et al*, No. 1:04cv492, 2006 WL 2598034, *7 (N.D.Ind. Sept.8, 2006) (finding a corporate representative's knowledge is inferred regarding the matters she attests to and does not have to a demonstrated "personal knowledge"). *Hijeck v. Menlo Logistics, Inc.*, No. 3:07-cv-0530-G, 2008 WL 465274, *4 (N.D.Tex. Feb.21, 2008) (*citing Brazos River Authority v. GE Ionics, Inc.* 469 F.3d 416, 433 (5th Cir.2006) acknowledging a corporate representative does not have to have direct personal knowledge of each and every fact discussed in affidavit or deposition but can be subjective beliefs and opinions of the corporation)

Despite the fact Plaintiff acknowledges that Ms. Myers is a Rule 30(b)(6) designee, Plaintiff still urges this Court to strike the Affidavit relying on FRCP 50(c)(4) personal knowledge requirement. While Rule 56(c)(4) does require an affidavit to be based on personal knowledge, as stated in *Atlantic Marine Florida*, an affidavit by a Rule 30(b)(6) designee does not have to be based on personal knowledge but is expected to be based on the organization's collective knowledge. Facts in this case are similar to *Atlantic Marine Florida*, Joy Myers is a Rule

30(b)(6) designee, her affidavit was filed in support of defendant's motion for summary judgment, and plaintiff's argument to strike the affidavit is based on Joy Myers insufficient personal knowledge. Accordingly this Court, as it did before in *Atlantic Marine Florida*, denies plaintiff's motion to strike Joy Myers' affidavit in support of defendant's summary judgment because as a Rule 30(b)(6) designee it is not necessary for her to have "…direct, personal knowledge of each and every fact discussed in affidavit or disposition." (*Atlantic*).

### B. Sham Doctrine

The Court may order any "redundant, immaterial, impertinent, or scandalous matter" stricken from any pleading upon the motion of any party. Fed.R.Civ.P. 12(f). A motion to strike is denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Pasholan v. GTE Directories n/k/a Verizon Directories*, 208 F.Supp.2d 1293, 1297 (M.D. Fla. 2002). Accordingly, the Court may disregard an affidavit as a "sham" when a party contradicts prior deposition testimony without providing a valid explanation. *Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (holding that when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given testimony.") However, the Court is aware the sham affidavit rule is to be applied only "sparingly because of the harsh effect it may have on a party's case." *Allen v. Bd, of Pub. Educ. For Bibb County*, 459 F.3d 1306, 1316 (11th Cir. 2007). Additionally, there exists a clear distinction between discrepancies that "create transparent shams" and discrepancies that "create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). Therefore, a Court should not strike an affidavit if it "supplements earlier testimony, presents a variation of

testimony, or represents instances of failed memory." *Croom v. Balkwill*, 672 F. Supp.2d 1280, 1286 (M.D. Fla. 2009). Instead the variation in witness testimony would create an issue of credibility of witnesses and weight of evidence to be resolved by the trier of fact because "to allow every failure of memory or variation in a witness's testimony to be regarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine whether the affiant was stating the truth." *Id*. at 1286 (quoting *Tippens v. Celotex Corp.*, 805 F.2d at 953-54).

In applying the sham affidavit principles mentioned, this Court finds that Joy Myers' affidavit is not a sham. Any of her inconsistencies, discrepancies, and failures of memory go to the weight and credibility of the evidence. Plaintiff asserts the affidavit of Joy Myers is "directly contradicted by her previous deposition testimony, and is the sort of sham affidavit that the Eleventh Circuit has widely admonished" (Doc. 35). However Plaintiff fails to indicate to this Court whether the entire affidavit or specific testimony is being contested. Therefore, the Court will only address the specific testimony Plaintiff alleges is based on lack of personal knowledge addressed in its motion, and will do so in turn.

First, Plaintiff asserts that Joy Myers does not have personal knowledge regarding the relationship between Sunbelt and Polk School Board and her comments are conclusory. (Doc. 35). In her deposition, Ms. Myers was asked whether the Polk County School District ever made a decision to terminate Sunbelt as the agent of record on the MetLife Dental Insurance. (Myers Depo. at 29, Ex. 2) Ms. Myers testified, "she did not believe it would have been the school board's decision to terminate [Sunbelt] as agent because that was a relationship between MetLife and Sunbelt." Later, Ms. Myers submitted in her affidavit that "Sunbelt was considered 'Agent of Record' for purposes of transaction of insurance business on behalf of the School Board, or its

6

employees, with regard to the School Board's group dental insurance program with MetLife, and Sunbelt's status as 'Agent of Record' expired at the close of business on September 30, 2008." (Myers Aff. §10). Although Ms. Myers now affirmatively states an "Agent of Record" relationship existed between Sunbelt and Polk County School District, her testimony is for clarification purposes and is supplemental in nature to knowledge she learned about as a Rule 30(b)(6) designee. As stated in Defendant's Memorandum of Law in Opposition to the Motion to Strike Joy Myers' affidavit (Doc. 40), Ms. Myers was addressing the relationship between MetLife and Sunbelt she "believed" she was being asked about, and not the relationship between PCSB and Sunbelt. Therefore, Plaintiff's motion to strike is denied as to this statement because it was supplemental and clarifying in nature.

Second, Plaintiff asserts Joy Myers' affidavit regarding the August 4th letter from Steve Henderson of Polk County School Board to Corbin Moreau of MetLife is conclusory and serves as an improper interpretation of the physical evidence that speaks for itself since she does not have personal knowledge about the document. (Doc. 35) During her deposition, Ms. Myers testified she had never seen the August 4th letter before until it was shown to her that day. (Myers Depo. at 29, Ex. 2). In her affidavit, Ms. Myers states, "she has no reason to dispute that Mr. Henderson's letter (the August 4th letter) was sent." (Myers Aff. §9). Her statement in the affidavit is merely a variation of her testimony in the deposition. She does not assert she had indeed seen the letter before her deposition date, and, additionally, she grounds her knowledge "according to the documents produced by MetLife in this litigation." (Myers Aff. §9). Myers' testimony concerning a variation of testimony goes to the credibility of the witness and the weight of the evidence, and does not warrant the affidavit being stricken. Therefore, Plaintiff's Motion to strike is denied as to this statement.

Finally, Plaintiff asserts that because the affiant does not have knowledge of the commissions at issue her assertions in the affidavit must be stricken. (Doc. 35). When asked about her knowledge concerning commissions and whether she was involved in the decision-making process of commissions, Ms. Myers testified she was not familiar with the process for determining commissions and does not "recall" anything about the school board directing MetLife to no longer pay commissions. (Myers Depo. at 17). In her affidavit, Ms. Myers' testimony with respect to commissions concerning the 125 Voluntary Benefits Plan contract and the RFP containing Sunbelt's commissions addressed the terms of the contracts she had reviewed after deposition. (Myers Aff. §§ 4, 5). Her affidavit testimony does not contradict or repudiate previously given clear testimony, instead the line of questions shows Myers failed to give clear answers concerning commissions because she did not have personal knowledge when questioned. As a Rule 30(b)(6) designee Ms. Myers is not required to have personal knowledge as Plaintiff asserts but collective knowledge of the company, and her affidavit serves to supplement her deposition and does not warrant being stricken. Plaintiff's motion to strike is, therefore, denied as to this statement.

Any discrepancies between the affidavit of Joy Myers and her deposition do not create transparent shams that rise to the level of a "sham" affidavit as alleged by Plaintiff. Instead, any discrepancies should be left to the trier of fact concerning the witnesses' credibility and the weight of the evidence since the statements are supplemental in nature and are a variation to prior testimony. Therefore, because neither the statements nor the affidavit *in toto* will be stricken as a sham affidavit, Plaintiff's request for an assessment of reasonable expenses including attorney's fee is moot since defendant, MetLife, has not abused the judicial process by

submitting a sham affidavit and is therefore denied. Respectively, Defendant MetLife's request for reimbursement of attorneys' fees incurred in responding to this motion shall also be denied.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Having decided the Motion to Strike (Doc. 35), this Court can now decide Defendant and Plaintiff's Cross Motion for Summary Judgment (Doc. 36, 29).

### STATEMENT OF FACTS

The following facts are submitted by the parties, in support and/or in opposition to, their respective motions for summary judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motions.

Plaintiff, Sunbelt Worksite Marketing, Inc. ("Sunbelt" or "Plaintiff"), is a Florida corporation, which, through its brokers and agents, is authorized to sell individual and group insurance policies in the State of Florida (Doc.25). Defendant, Metropolitan Life Insurance Company ("MetLife "or "Defendant"), is a New York corporation which offers a full range of insurance and other financial products and services both nationally and abroad, including group dental insurance (Doc.37). MetLife is a foreign corporation authorized to business in Florida (Doc. 25). Plaintiff alleges an amount in controversy in excess of $75,000.00 (Doc. 1), and diversity jurisdiction is therefore proper pursuant to 18 U.S.C. § 1332.

In or around May 21, 2007, the Polk County School Board's ("PCSB") Superintendent Insurance Committee contracted with Sunbelt to conduct a competitive bid process for the PCSB's Request for Proposal ("RFP") (Doc. 30). The RFP advertised PCSB's interest in entering into a future contract with a qualified insurance company for group dental insurance for PCSB's eligible employees (Doc. 30). MetLife bid and won the RFP, agreeing to provide

9

PCSB's employees dental insurance for the time period of October 1, 2007, to September 30, 2008, with the option, later taken, to extend the agreement another two years (Doc. 30). Although PCSB was not the entity personally insured by MetLife's dental insurance, MetLife considered PCSB to be the policyholder, and PCSB's employees who paid for the dental insurance premiums, as individual insurance recipients of the policyholder (Doc. 29). Additionally the RFP identifies Sunbelt as the PCSB's "agent of record" because Sunbelt had become the PCSB's §125 Voluntary Benefits Plan Administration in June 2007 (Doc. 30). During the period of October 1, 2007, through September 30, 2008, Sunbelt served as the PCSB's §125 Voluntary Benefits Plan Administration manager, pursuant to a one-year contractual term arrangement (Doc. 30). As the Administrator manager, Sunbelt earned commissions for administering insurance needs to the employees (Doc. 29).

On or around June 29th, 2007, MetLife and Sunbelt entered their own agreement, Metropolitan Life Insurance Company Single Case Commission agreement ("Agreement"). MetLife agreed to pay Sunbelt a flat 10% commission of the premiums from the employees it serviced (Doc. 29). The Agreement came into effect October 1, 2007, and Sunbelt would continue to receive commissions so long as it satisfied all six (6) conditions within the Agreement (Doc. 29). From October 1, 2007, to October 1, 2008, MetLife paid Sunbelt the agreed upon 10% commission every month from the incoming premiums (Doc. 29). However the commission payments ceased starting October 1, 2008 (Doc. 29). When Sunbelt demanded commission payments, MetLife refused resulting in Sunbelt bringing forth this action (Doc. 29).

Sunbelt's position is that it never breached any of the Agreement's conditions from October 1, 2007, through December 31, 2010, and, therefore, is entitled to the unpaid commissions. Here, the parties are disputing over two conditions, 1) whether Sunbelt was, is and

10

still is recognized by PCSB, the policyholder, as the agent, and 2) whether Sunbelt continued to service dental plans until December 2010 and is entitled to the commissions (Doc. 30).

MetLife ceased paying commissions to Sunbelt on October 1, 2008, based on communication by the PCSB that it no longer recognized Sunbelt as its agent, a violation of one of the six conditions (Doc. 30). The PCSB April Board meeting unanimously agreed to allow PCSB's §125 Voluntary Benefits Plan Agreement with Sunbelt to lapse and not renew (Doc. 30). Therefore, when October 1, 2008, came the assertion is that Sunbelt had no authorization to represent PCSB in certain insurance matters (Doc. 30). Additionally, in May 2008 a letter from PCSB to Sunbelt notified of PBSC's §125 Voluntary Benefits Plan Agreement non-renewal and an end of authorized representation for PCSB on September 30, 2008. Sunbelt then informed MetLife on June 24, 2008, it had not renewed its contract with PCSB, (Doc. 30). The 2008 August letter from PCSB served as a confirmation for MetLife that Sunbelt was officially terminated as the PCSB's agent and accordingly they terminated commissions to Sunbelt (Doc. 30). Although nothing explicitly exists in writing reflecting a termination in Sunbelt's status, MetLife states the Agreement does not contain any requirement that a change in agency status must be in writing (Doc. 30)

Sunbelt argues that the August 4, 2008 letter mentioning "net commissions" was the sole reason MetLife stopped making commission payments (Doc. 29). MetLife's reliance, according to Sunbelt, on the August 2008 letter is inappropriate as it does not address Sunbelt's status as an agent and does not discuss whether Sunbelt was servicing its accounts (Doc. 29). Instead, Sunbelt claims it remained the dental insurance's agent because PCSB never terminated Sunbelt as the "agent of record" or replaced Sunbelt. Sunbelt's argument is that if it had been terminated,

but not replaced, MetLife would have violated Florida Statute requiring a registered agent at all times (Doc. 29).

MetLife's refusal to pay commissions then resulted in Sunbelt commencing this action in the 10th Circuit Court for Polk County for MetLife's alleged breach of contract (Doc. 30). MetLife removed the action in October 2009 to this Court based on diversity (Doc. 30). Sunbelt's filed amendment in November 2010 alleges MetLife breached either MetLife's Small Market Commission ("Market Commission") and/or MetLife's Single Case Commission Agreement ("Agreement") (Doc. 30). Answering with affirmative defenses, MetLife states Sunbelt is not entitled to any commissions after October 1, 2008, because Sunbelt was discharged as PCSB's agent, and since the discharge Sunbelt could not service the business under the policy (Doc. 30).

## STANDARD OF REVIEW

Summary judgment or partial summary judgment is properly granted if the pleadings, depositions, answers to interrogatories and admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding summary judgment or partial summary judgment, the Court must consider all evidence in light most favorable to the nonmoving part, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983), and must draw all reasonable inferences in favor of the nonmoving party, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, (2000). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). This burden may be discharged if the moving party can show an absence of evidence to support the nonmoving party's case. *Id.* at 323, 325. If the

moving party meets this burden, the nonmoving party must then designate specific facts demonstrating a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Issues of fact are "genuine" only if a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those facts that will affect the outcome of the trial. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The weighing of evidence and determinations of credibility are the functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the Motion for Summary Judgment or Partial Summary Judgment be denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

## DISCUSSION

### CROSS MOTIONS FOR SUMMARY JUDGMENT

Defendant essentially argues that there is no material issue of fact as to Sunbelt's termination as the "agent of record" by PCSB, and, therefore, Sunbelt is not entitled to the commission payments it claims MetLife owes, as per terms of the contract (Doc. 30). According to Defendant, under the plain and unambiguous terms of the commission agreement between Sunbelt and MetLife, Sunbelt lost its right to receive those commissions when the PCSB decided that it no longer recognized Sunbelt as its "agent of record" and that they could no longer service employees (Doc. 30).

Plaintiff's argument in moving for partial summary judgment is essentially the opposite of Defendant in their Motion for Summary Judgment (Doc. 30). The crux of Plaintiff's position is that there is no material issue of fact that PCSB always has, always did, and still continues to recognize Sunbelt as its agent, and for the delivery and servicing of MetLife's voluntary group dental insurance policy. Therefore, MetLife is not excused from its failure to pay Sunbelt the commissions due under the Agreement, and instead has breached its commission fee contract with Sunbelt by failing to pay the required contractual commissions (Doc. 29).

Where, as here, the Court has diversity jurisdiction, it must determine substantive legal issues according to the law of the forum state. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Florida law governs this breach of contract dispute as the contract at issue was entered into and calls for performance in Florida. *Goodman v. Olsen*, 305 So.2d 753, 755 (Fla. 1974). Nonetheless, interpretation of a contract is generally a matter of law to be determined by the Court, and a court should not rewrite the terms of any contract. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So.2d 427, 428 (Fla. 1990). That said, once the terms of a contract are settled or if those terms are unambiguous to begin with, as is stipulated here, factual issues as to the parties' intent or what actually occurred between the parties cannot be decided on summary judgment and must be left to the fact-finder. *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.* 513 So.2d 218, 219 (Fla. 1st Dist. App. 1987). What is more, when terms of a contract are ambiguous, the Court will "apply the facts of [a given] case and determine if there are any disputed issues which would preclude granting the requested summary judgment." *McCluney v. Gen. Am. Life. Ins. Co.*, 1 F. Supp. 2d 1347, 1353 (M.D. Fla. 1998).

The main question here is whether or not Sunbelt's agent relationship with PCSB has been terminated, if at all, and if so, when was the agency relationship terminated. The parties

Metropolitan Life Insurance Company's Single Case Commission Agreement ("Agreement") states:

> "Commissions are calculated based on premium resolved by line of coverage and will be paid so long as: (a) you are currently licensed and appointed by the applicant's State Insurance Department to sell the insurance provided by the policy; (b) you service the business; (c) you use only sales material approved by MetLife; (d) the policyholder recognizes you as the agent/broker of record; (e) any commission advances or overpayments have been properly recovered by MetLife..." (Doc. 37, Ex. B).

The two conditions from their Agreement that both parties dispute are (b) and (d). However, neither party's Motion for Summary Judgment is arguing the conditions are unambiguous, but instead they are merely disputing its application to the facts of their case – namely, was Sunbelt terminated as "agent of record," if at all, and if so, when (Doc. 29). In order to defeat Summary Judgment, then, the opposing party must demonstrate that there exists evidence outside the pleadings by which a reasonable jury might find whether or not Sunbelt was an agent.

In the instant case, Sunbelt offers evidence to support its position that it remained PCSB agent on record, continued to service the clients, and is, therefore, entitled to commissions from October 1, 2008, until December 2010. In no written document can MetLife show where the status of Sunbelt as agent has changed or has been replaced. Also in the April Board Meeting, Sunbelt's status as an agent is reconfirmed, that same meeting where the members unanimously agreed on not renewing Sunbelts contract in that particular matter (Doc. 37, Ex. 15). On the other hand, Defendant offers evidence to support its position that the intent by PCSB was to no longer recognize Sunbelt as Agent of Record on the group dental insurance plan in October 2008. Numerous oral conversations PCSB had with Mr. Greco concerning "firing" Sunbelt, the direct letter to MetLife regarding PCSB not renewing Sunbelt's §125 Voluntary Benefits Plan Agreement, and the August 4th 2008 letter confirming the change in fees. (Doc. 37). More

15

importantly, as stated by MetLife, the Agreement between the parties did not contain any requirement on how the Policyholder is to communicate its intent to terminate its agent record relationship (Doc. 37). Consequently, as stated in *Universal Underwriters Ins. Co.*, 513 So.2d at. 219, factual issues as to the parties' **intent** or what actually occurred between the parties cannot be decided on summary judgment and must be left to the fact-finder.

Given that there exists material issues of fact as to whether an intent to terminate Sunbelt entirely as PCSB's agent or only to terminate agency on certain insurance programs in the PCSB's §125 Voluntary Benefits Plan Administration non-renewal, both parties have failed to meet their summary judgment burden. Accordingly it is **ORDERED** that the motion to strike (Doc. 35), the defendant's motion for summary judgment (Doc. 30), and plaintiff's motion for partial summary judgment (Doc. 29) be **DENIED**. and therefore Plaintiff's Motion for Partial Summary Judgment is **DENIED**; and accordingly Defendant's Motion for Summary Judgment is **DENIED**.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 8th of August, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.